_____FILED  _____ENTERED
_____LODGED _____RECEIVED

JUN 1 5 2000

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

NEUROTRON, INC.          :

                         :

v.                       :     Civil Action WMN-00-514

                         :

AMERICAN ASSOCIATION OF  :
ELECTRODIAGNOSTIC MEDICINE :

### MEMORANDUM

Before the Court is Plaintiff's Motion for Preliminary
Injunction (Paper No. 12).[1]  The motion is ripe for decision.
Upon a review of the motion and the applicable case law, and
after conducting a hearing, the Court determines that the motion
will be denied.

### I. BACKGROUND

Plaintiff Neurotron, Inc. is the manufacturer of the
Neurometer® Current Perception Threshold (CPT), an electronic
testing device used to detect nerve impairments.  Defendant
American Association of Electronic Diagnostic Medicine is a
medical professional association whose members include
neurologists, physical medicine and rehabilitation specialists,
and others interested in electrodiagnostic medicine.  Defendant
publishes an official journal, Muscle & Nerve, and also maintains
an Internet website.  In April 1999, Defendant published an
article in Muscle & Nerve entitled "Technology Review:

---

[1] Also before the Court is Defendant's motion to dismiss or
for summary judgment.  That motion is not yet ripe for decision.

1



Neurometer® Current Perception Threshold (CPT)."  The review was published again in September 1999 and Defendant continues to post it on its website.  The review reached the following conclusion about Plaintiff's product: "Although the abstracts, textbook chapters, and review articles describe many of the useful features attributed to this instrument, the reviewers concluded that information in these publications is insufficient to make conclusions about the usefulness of this form of sensory testing at the present time."  Plaintiff's Hearing Exhibit 6 at 526. Plaintiff maintains that the review contains multiple injurious falsehoods about the Neurometer® CPT.

On February 24, 2000, Plaintiff filed a complaint in this Court against Defendant, asserting claims of injurious falsehood, false light commercial disparagement, civil conspiracy, violation of the Lanham Act, 15 U.S.C. § 1125(a), and tortious interference with contractual relations.  On February 25, 2000, Chief Judge Motz denied, in large measure,[2] Plaintiff's motion for a temporary restraining order, but left open several issues such as

_____

[2] Despite denying the motion for temporary restraining order, Judge Motz ordered Defendant to restore disclaimer language prospectively.  The disclaimer was previously included with the review when published in April 1999 but omitted from subsequent publications.  It provided that the review was not written with the intent that it be used as a basis for reimbursement decisions.

2

whether the review should be removed from the Internet and whether Defendant should be enjoined from reprinting and selling the review. Plaintiff filed a second motion for a temporary restraining order on March 22, 2000, which Judge Motz again denied.

Although Judge Motz denied Plaintiff's requests for temporary restraining orders, he did order that an expedited preliminary injunction hearing be held. On March 15, 2000, Plaintiff filed a supplemental motion for preliminary injunction which is now before the Court. Plaintiff requests that the Court issue a preliminary injunction which would: (1) incorporate Judge Motz's previous order concerning the disclaimer language and expanding it to require Defendant to correct its error of omitting the disclaimer by notifying all recipients of the review; (2) prohibit Defendant from further printing, selling, using, distributing or soliciting the review or granting permission to others to do the same; (3) require Defendant to revoke any permission already given; and (4) order Defendant to remove all copies of the review from the Internet. On April 14 and April 21, 2000, this Court conducted an evidentiary hearing on Plaintiff's motion.

## II. ANALYSIS

When deciding whether to grant a preliminary injunction, the

3

Court should conduct a hardship balancing test, examining the
following factors: (1) the likelihood of irreparable harm to
Plaintiff if the preliminary injunction is denied; (2) the
likelihood of irreparable harm to Defendant if the requested
relief is granted; (3) the likelihood that Plaintiff will succeed
on the merits; and (4) the public interest.  Manning v. Hunt, 119
F.3d 254, 263 (4th Cir. 1997); Blackwelder Furniture Co. v.
Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).

## A. Likelihood of irreparable harm to Plaintiff

Plaintiff's chief financial officer, Ralph Cohen, maintains
that Plaintiff's sales of the Neurometer dropped by more than 37%
following the publication of Defendant's article in April 1999.
According to Plaintiff, some customers have identified the
Defendant's article as a reason not to purchase the Neurometer.
Plaintiff further asserts that certain private insurers have
denied coverage for the procedure.  In addition to economic harm,
Plaintiff claims that it will be irreparably harmed by potential
loss of customers and loss of goodwill.  See Multi-Channel TV
Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d
546, 552 (4ᵗʰ Cir. 1994).

While it is true that the threat of loss of customers to
competitors and loss of goodwill can be sufficient irreparable
harm for a preliminary injunction, the circumstances of the

4

present case do not suggest that Plaintiff will be irreparably harmed if its motion for preliminary injunction is not granted. First, it is not clear that the Defendant's article was the sole contributor to Plaintiff's alleged decrease in sales. During April 1999, when the article was first published, another company began marketing a product, the Medi DX 7000, that performs the same functions as the Neurometer. In addition, Plaintiff has blamed others for its financial distress. Plaintiff filed a lawsuit in 1998 against insurance companies for allegedly disparaging comments about the Neurometer, claiming that its sales decreased by 26% following those defendants' disparaging statement.

Even were the Court to assume that Defendant's article caused Plaintiff to lose sales, Plaintiff's delay in responding to the review and filing suit undermines its argument that emergency relief is necessary. Plaintiff was aware of the technology review within days of its publication. Nonetheless, Dr. Jefferson Katims, Plaintiff's medical and research director, did not respond to the article until six months later. In October 1999, he sent a letter to the editor of Muscle & Nerve, Michael Aminoff, accompanied by a sixteen page "Manufacturer's Response to AAEM Neurometer® CPT Technology Review Article." He requested that the response be published and that the original

5

review be retracted. Aminoff responded that he would not retract the article and would not publish the response because it was too long. He also informed Katims that he should address his concern to the executive director, Shirlyn Adkins. Katims wrote to Adkins in October 1999 and again requested a retraction and that his response be published. On January 17, 2000, Adkins wrote that the response would not be published because it was too long; the journal's policy provided that letters should be limited to 500 words. She encouraged Katims to resubmit a shorter response, within the word limit, which Defendant would be "happy to consider" for publication. Plaintiff's Hearing Exhibit 12B. She further encouraged Katims to include a note stating that interested readers could contact Plaintiff directly for a more extensive rebuttal. Plaintiff did not submit a letter within the 500 word limit. Instead, Plaintiff filed this lawsuit in February 2000, seeking emergency relief nine months after the article's first publication. This delay indicates that speedy action is not necessarily required. Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel, 872 F.2d 75, 80 (4th Cir. 1989). In addition, the Court agrees with Defendant that the review has already entered the public debate concerning the Neurometer.

## B. Likelihood of irreparable harm to Defendant

Plaintiff argues that Defendant will not be irreparably

6

harmed if the Court enjoins Defendant from publishing the review on its website and from further disseminating the article. The Court disagrees. Plaintiff relies on its conclusion that Defendant's article qualifies as commercial speech, which merits less First Amendment protection than other forms of expression. Furthermore, Plaintiff asserts that false or misleading commercial speech is not accorded any constitutional protection whatsoever. For the reasons stated below, Plaintiff will not likely succeed on the merits of its claim because Defendant's article is not commercial speech, nor is it false or disparaging. Plaintiff is requesting that the Court impose a prior restraint on Defendant's speech. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

## C. Likelihood that Plaintiff will succeed on the merits

Plaintiff maintains that it is likely to succeed on its Lanham Act and injurious falsehood claims. However, Plaintiff has not met its burden of raising serious, substantial, difficult, and doubtful questions as to make them fair ground for litigation. See Blackwelder, 550 F.2d at 195.

The Lanham Act proscribes "false or misleading representation[s] of fact . . . in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). In order for

7

representations to constitute "commercial advertising or
promotion" under the Lanham Act, they must be:

> (1) commercial speech; (2) by a defendant who is in
> commercial competition with plaintiff; (3) for the
> purpose of influencing consumers to buy defendant's
> goods or services[;] . . . (4) disseminated
> sufficiently to the relevant purchasing public to
> constitute "advertising" or "promotion" within that
> industry.

Gordon and Breach Science Publishers v. American Inst. of

Physics, 859 F.Supp. 1521, 1535-36 (S.D. N.Y. 1994).  In

extending the Lanham Act to product disparagement, Congress made

clear that it should not be interpreted so as to infringe upon

free speech protected by the First Amendment.  Id. at 1533.

Rather,

> only false or misleading "advertising or promotion"
> would be actionable, whether it pertained to the
> advertiser itself or another party.  The change would
> exclude all other misrepresentations from section 43(a)
> coverage.  These others are the type which raise free
> speech concerns, such as the Consumer Report which
> reviews and may disparage the quality of . . .
> products, [and] misrepresentations made by interested
> groups which may arguably disparage a company and its
> products. . . .  All of these would be judged by first
> amendment law . . . and not section 43(a) law . . .

Id. (quoting Rep. Kastenmeier, 135 Cong. Rec. H1216017 (daily ed.

April 13, 1989)).

Commercial speech is entitled to a lesser degree of First

amendment protection than other forms of expression.  United

States v. Edge Broad. Co., 509 U.S. 418, 426 (1993).  Commercial

8

speech that is false or misleading may be prohibited.  In re
R.M.J., 455 U.S. 191, 203 (1982).  Commercial speech has been
defined as speech proposing a commercial transaction.  United
States v. Edge Broad., 509 U.S. at 426.  A second definition
provided by the Supreme Court is a somewhat larger category of
commercial speech - "'expression related solely to the economic
interests of the speaker and its audience.'"  City of Cincinnati
v. Discovery Network, Inc., 507 U.S. 410, 422 (1993) (quoting
Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New
York, 447 U.S. 557, 561 (1980)).

     In the present case, it is unlikely that Plaintiff can
establish that the Defendant's article is commercial speech.
First and foremost, it does not propose a commercial transaction.
Plaintiff maintains that the article is solely related to
Defendant's own economic interests.  The Neurometer is a device
which, unlike many other nerve tests, can be performed by a
physician without a referral to a neurologist or a physiatrist (a
physician specializing in physical and rehabilitative medicine).
Plaintiff claims that the neurologists and physiatrists receive
substantial income from these referrals and, therefore, have an
interest in delaying recognition of the Neurometer.  Plaintiff
maintains that Defendant's members would economically benefit
from the commercial disparagement of the Neurometer and would

derive benefit from the denial of public and private
reimbursement for the use of the Neurometer.

The Court agrees with Defendant that the article is a
scholarly work intended to educate its readers about a
development in the electrodiagnostic medical field.  Plaintiff's
opposing position is dubious, in that the evidence is to the
contrary.  For example, some of Defendant's members use the
Neurometer.  In addition, Plaintiff maintains exhibition booths
and demonstrates the use of the Neurometer at Defendant's annual
meetings.  In fact, Defendant has approved Dr. Katims'
application to hold a panel discussion about the Neurometer's
technology at the upcoming annual meeting.  In addition, Muscle &
Nerve has published articles that Dr. Katims has deemed to be
very positive about the Neurometer.

Furthermore, even if Defendant had an economic interest in
disparaging the Neurometer, the Supreme Court has clearly held
that economic motivation, by itself, does not make speech
commercial.  Bolger v. Young Prods. Corp., 463 U.S. 60, 67
(1983).  Rather,

    [n]on-profit organizations must be free to participate
    fully in the marketplace of ideas without fear of
    sanctions, even if such participation redounds to their
    financial benefit.  To hold otherwise would be to
    squelch the expression of facts and opinions which
    might not otherwise find ready expression through
    commercial media.

10

Gordon and Breach, 859 F.Supp. at 1541.

In addition to the speech not being commercial, Plaintiff is also unlikely to succeed on its Lanham Act claim because Plaintiff and Defendant are not in competition with one another. Plaintiff manufactures and markets an electrodiagnostic medical device.  Defendant does not manufacture, sell, or market any medical device.  Defendant's members are physicians, not companies that manufacture or market medical devices.  In fact, Dr. Katims is a member of the American Association of Electrodiagnostic Medicine.  Defendant's members are actual and potential customers of Plaintiff.

Similarly, Defendant's article does not attempt to influence consumers to buy Defendant's goods or services.  Where a defendant makes no effort to persuade customers to buy competing goods or services, there is no basis for a Lanham Act claim. Kansas Bankers Surety, Co. v. Bahr Consultants, Inc., 69 F.Supp.2d 1004, 1014 (E.D. Tenn. 1999).

Plaintiff is also unlikely to succeed on the merits of its Lanham Act claim and its injurious falsehood claim because the article does not contain false or misleading statements of fact and is not disparaging.  In order to succeed on a Lanham Act claim, Plaintiff must show the existence of a material false statement of fact, 15 U.S.C. § 1125(a)(1)(B), not opinion.  In

11

order to succeed on its injurious falsehood claim, Plaintiff must
prove that Defendant made a false and disparaging statement of
fact that played a substantial and material part in inducing
others not to deal with Defendant.  World Gym Licensing, Ltd. v.
Fitness World, Inc., 47 F.Supp.2d 614, 625 (D. Md. 1999).
Expressions of a subjective opinion, which cannot be proven true
or false, are immune from suit under the First Amendment,
Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990), and,
therefore, are not subject to the Lanham Act or a claim of
injurious falsehood.

Defendant's article was written as a literature review of
articles concerning the Neurometor through February 1, 1998.  The
article's author made subjective decisions concerning how much
weight to assign to different articles based on, for example,
whether they were full articles or merely abstracts.  The article
does not purport to be peer reviewed.  The Court agrees with
Defendant that the technology review's statements concerning what
the medical literature establishes regarding the ability of the
Neurometor constitute opinions about the state of the medical
literature and Plaintiff's disagreement with those opinions does
not demonstrate that they are false and disparaging.  For
example, Plaintiff argues that the article's statement concerning
the Neurometor's usefulness with children is a false statement of

12

fact. The article lists children among the groups of individuals for which the Neurometor has not been shown to result in a reproducible score. In its summary of the literature, Defendant wrote:

> the Neurometor® CPT test requires active patient participation. In the absence of cooperation (due to physical or motivational limitations, including a failure to follow instructions) the Neurometor® CPT test will generally fail to result in a reproducible score. This limitation excludes certain classes of patients from investigation (such as children, those too weak to communicate, and the comatose patient).

Plaintiff's Hearing Exhibit 6 at 525. The article's authors concluded that the scientific publications were insufficient to establish that the Neurometor results in reproducible scores in children. Four of the five publications cited by Plaintiff in support of its argument that the article's statement is false regarding children, are abstracts, i.e., brief synopses. The article's primary author, Dr. George Baquis, concluded that abstracts did not contain sufficient information to draw conclusions regarding the clinical usefulness of the technology. The fifth and final publication was published after the review's February 1, 1998 cutoff date. Accordingly, the sources cited by Plaintiff do not undermine the technology review's conclusion nor do they prove that the opinion reached by the review about the existing literature is false. While it is beyond the scope of

13

this memorandum opinion to address every alleged falsity claimed
by Plaintiff, the remaining allegations of falsity would
similarly fail on their merits because the article is an
expression of Defendant's opinion regarding the usefulness of the
Neurometor based on existing literature. It is not for the Court
to read the more than 200 scientific publications to form its own
opinion about the utility of the Neurometor. Clearly, Plaintiff
and Defendant have a difference of opinion.

## D. Public interest

Finally, the Court agrees with Defendant that granting
Plaintiff's motion would be inimical to the public interest.
Debate on the efficacy of medical technologies is valuable and
should not be discouraged by granting such injunctive relief as
Plaintiff requests. Plaintiff's recourse lies in the marketplace
of ideas, not in suppressing contrary conclusions and opinions.
See Underwager v. Salter, 22 F.3d 730, 736 (7th Cir.), cert.
denied, 513 U.S. 943 (1994) ("Scientific controversies must be
settled by the methods of science rather than by the methods of
litigation. . . . More papers, more discussion, better data, and
more satisfactory models - not larger awards of damages - mark
the path toward superior understanding of the world around us.")
In addition to the Defendant's interest in its own First
Amendment rights, the public also has an interest in the faithful

14

protection of well-ingrained constitutional protections such as freedom of speech.

## III. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Preliminary Injunction will be denied.  A separate order will issue.

William M. Nickerson
United States District Judge

Dated: June *15*, 2000

15